IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TROY DALE GREEN, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> JEFF CONWAY, ) <br> ) <br> Respondent. ) <br> _____) | Case No. CV-04-406-S-LMB <br><br> **MEMORANDUM ORDER** |

Pending before the Court in this habeas corpus action is Defendant's Motion for Summary Judgment (Docket No. 13). Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Having reviewed the record in this case, including the state court record, and having considered the arguments of the parties, the Court enters the following Order.

## I.

### BACKGROUND

On June 7, 1999, Petitioner was charged with manufacturing a controlled substance, a violation of Idaho Code § 18-1506, in the Fourth Judicial District Court of Idaho. He was found guilty after a jury trial. *See State Court Record*, Exhibit A-1 (Docket No. 11). In his federal Habeas Corpus Petition, he contends that his Sixth Amendment right to confront witnesses was violated when the state district court

MEMORANDUM ORDER 1

prohibited him from cross-examining Mark McCallum, a key prosecution witness, to explore McCallum's biases and motivation for testifying.  *See Petition* (Docket No. 3).

Prior to Petitioner's arrest, McCallum approached officers and offered to turn in Petitioner for an agreement that McCallum's pending misdemeanor DUI charges be dismissed.  McCallum led police officers to a shed behind his house where police found Petitioner and Petitioner's girlfriend; the shed was obviously set up to manufacture methamphetamine.  *State Court Record*, Exhibit A-3 (Trial Transcript), at p. 10-23 (Docket No. 11).  Petitioner was then arrested and charged.

McCallum's DUI charge was dismissed as result of the agreement with the prosecutor.  *Id*. at p. 23.  However, at the time of trial, McCallum had a felony controlled substance charge pending against him.  *Id*. at p. 27-28.  The Court allowed Defendant to present evidence that McCallum had agreed to testify in exchange for dismissal of the misdemeanor DUI charge, but the Court did not allow Petitioner to cross-examine McCallum about the pending felony controlled substance charge:

> You can certainly ask about any sort of relationship with Mr. McCallum as to deals he received in exchange for his testimony.  What you will not be permitted to do, absent some demonstration of logical relevance, is ask about pending felony charges against a witness who may be called in this action that has only the clear value of impeachment.  That is not permissible under the rules.

*Id*. at 29-30.

At the conclusion of the trial, the jury found Petitioner guilty of manufacturing methamphetamine.  Judgment was entered on January 13, 2000.  The Idaho Court of

MEMORANDUM ORDER  2

Appeals affirmed the conviction. *See State's Exhibit B-4*, *State v. Green*, 38 P.3d 132, 136 (Ct. App. Idaho 2001) (Docket No. 11). The Idaho Supreme Court denied review, and Petitioner later pursued an unsuccessful post-conviction action.

## II.

## MOTION FOR SUMMARY JUDGMENT

A.   **Standard of Law**

The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11 of the Rules Governing Section 2254 Cases. Under the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In general, summary judgment is not inconsistent with established habeas practice and procedure. *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). However, the summary judgment standards must be applied in light of the substantive law governing habeas proceedings.

The Petition in this case is subject to the provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA), which was enacted in 1996. Under AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

MEMORANDUM ORDER  3

  2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

  A state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

  A state court's decision is an "unreasonable application" of federal law when the court was unreasonable in applying the governing legal principle to the facts of the case. *Id*. at 413. A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect; instead, the decision must be "objectively unreasonable." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

**B. Discussion**

  In Petitioner's case, the Idaho Court of Appeals held that the trial court's decision to restrict Green's cross-examination of McCallum "infringed Green's constitutional right

MEMORANDUM ORDER  4

of confrontation," contrary to *Davis v. Alaska*, 415 U.S. 308 (1974). *State Court Record*, Exhibit B-4, *State v. Green*, 38 P.3d 132, 136 (Ct. App. Idaho 2001).

The Idaho Court of Appeals next noted the applicable standard of law for determining if the error required reversal of Petitioner's conviction: "A Confrontation Clause violation does not automatically require reversal; rather, the doctrine of harmless error applies." *Id*. (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). The court correctly identified the standard as being "harmless beyond a reasonable doubt," which is the *Chapman*[1] standard that is referenced in *Van Arsdall*. *Id*.

The Idaho Court of Appeals went on to note that the *Van Arsdall* harmless error analysis includes reviewing "[1] the importance of the witness' testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted, and, of course, [5] the overall strength of the prosecution's case." *Id*. at 136-37 (quoting *Van Arsdall*, 475 U.S. at 684). Working within this legal framework, the Idaho Court of Appeals analyzed Petitioner's argument in light of the facts presented at trial as follows:

> Green maintains that the error in his case could not have been harmless because, had the jury known of McCallum's motive to provide testimony helpful to the prosecution, it might have concluded that Green was "set up" by McCallum. According to Green, if the jurors had known there was reason to discredit McCallum's testimony, they might have been

---

[1] *Chapman v. California,* 386 U.S. 18 (1967).

MEMORANDUM ORDER  5

>   unpersuaded that Green was the operator of the
>   methamphetamine lab as distinguished from a mere bystander
>   or dupe who was present in the shed for other reasons when
>   the police arrived.
>
>   We find Green's argument unconvincing, for after reviewing the
>   evidence indicating Green's connection to the methamphetamine lab,
>   we are persuaded beyond a reasonable doubt that the jury would
>   have found Green guilty even if the impeachment of McCallum had
>   not been incorrectly limited. According to police testimony, the shed
>   reeked with the odor of chemicals. When officers knocked on the
>   door of the shed, Green opened the door, but immediately said he
>   needed to put on some pants and then closed the door. This was
>   peculiar because Green at that point was already wearing blue jeans.
>   After Green closed the door on the pretext of needing to get dressed,
>   the officers heard sounds of glassware banging, liquids being poured,
>   and persons scurrying about inside. When police eventually entered
>   the shed, they found a black bag within which was a wallet
>   containing a note addressed to "Troy." The bag also contained men's
>   clothing and paraphernalia associated with drug production and drug
>   use, including glassware, tubing and scales. When Green was
>   searched incident to his arrest, officers found that he was carrying
>   $480 in cash. Green's girlfriend, who was with him at the shed, told
>   Detective Markle that she knew that Green was a methamphetamine
>   cook although she did not see him cooking that night. Given all of
>   this evidence, and particularly the activity that officers could hear
>   after Green closed the door to "put on some pants," we are confident
>   that the jury would have found Green guilty of manufacturing
>   methamphetamine even if Green had been allowed to disclose
>   McCallum's pending felony charge.

*Id*. at 137.

As noted above, this Court's task is to determine whether the opinion of the Idaho Court of Appeals "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Alternatively, the Court can grant relief if the

MEMORANDUM ORDER  6

decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Court notes that the Idaho Court of Appeals properly relied on *Davis*, *Van Arsdall*, and *Chapman*.

Upon reviewing the decision of the Idaho Court of Appeals and the entire record in this case, the Court concludes that the Idaho Court of Appeals reasonably applied the *Van Arsdall* factors to the facts presented to the jury to reach its decision that the error in limiting the scope of cross-examination was harmless.  First, McCallum's testimony was an important part of the prosecution's case, making impeachment evidence important (weighing in Petitioner's favor).  McCallum testified that he was a renter/sub-lessor of the real property at issue, and that Petitioner was a sub-lessee of the shed where the drug manufacturing took place.  McCallum's testimony established that the shed on the property was possessed and controlled by Petitioner.  McCallum also testified that Petitioner discussed his manufacturing of methamphetamine with McCallum.  McCallum further testified that he drew up a sub-lease agreement for Petitioner (albeit in a false name, "Tom Anderson," at Petitioner's request), so that McCallum would not be implicated in the manufacturing if that ever became an issue.  *State Court Record*, Exhibit A-3, at pp. 46-72.  As to the second *Van Arsdall* factor, the Court finds that a large portion of McCallum's testimony was not cumulative (weighing in Plaintiff's favor).

Third, the State brought forward a large amount of evidence corroborating McCallum's testimony that Petitioner and his girlfriend were manufacturing

MEMORANDUM ORDER  7

methamphetamine in the shed (weighing heavily in the State's favor).  Two officers testified that Petitioner was found in the shed.  *See State Court Record,* Exhibit A-1, at pp. 20, 78.  The shed was clearly used for manufacturing methamphetamine.  *Id*. at 283.  Petitioner and his girlfriend attempted to clean up the evidence of the drug lab when officers knocked at the shed door.  In addition, officers smelled a strong odor indicative of a methamphetamine lab, and they found many evidences of the chemicals and paraphernalia used to manufacture methamphetamine.  *See id.*, at pp.14-20, 85-89.

Further, Petitioner's girlfriend told police officers that he was a methamphetamine user and cook –  hearsay evidence that the jury heard (without objection from Petitioner) via Officer Markle's testimony.  *Id*. at 44.  Petitioner's girlfriend's fingerprints were found on some of the cooking equipment, and, although there were other fingerprints lifted, the fingerprint expert was unable to identify the fingerprints as Petitioner's or McCallum's because of the poor quality of the prints on the glass materials.  *Id*. at 257-58.  There was little or no evidence suggesting that it was McCallum, rather than Petitioner and his girlfriend, residing at the shed and manufacturing the methamphetamine.

Fourth, Petitioner was permitted to cross-examine McCallum extensively on all other topics, although he chose not to elicit any testimony that would implicate McCallum as the manufacturer or an aider and abettor (weighing in the State's favor).  Both McCallum and Officer Markle testified that McCallum received a dismissal of his DUI in return for his testimony, showing McCallum's bias.  *Id*. at pp. 23, 46-47.  Petitioner was

free to cross-examine MaCallum to bring out facts to suggest that it was he, rather than Petitioner, who ran the lab in the shed, but he did not.

Fifith, as just noted, the prosecution's case was strong when compared to Petitioner's theory that McCallum had "set him up" to avoid his own arrest (weighing heavily in the State's favor).  The impeachment information of McCallum's pending drug charge would not have been enough to cast doubt on the other evidence pointing to Petitioner as the drug manufacturer.  Had Petitioner been able to cross-examine McCallum on the controlled substance charge to obtain facts showing that McCallum hoped to gain additional favors from the prosecution in the controlled substance case, or that McCallum was trying to frame Petitioner, it would not have made much of a difference given that (1) the jury heard extensive evidence about McCallum's favorable agreement with the prosecution on the DUI matter in return for his testimony, and (2) the jury heard little or no other evidence showing that the lab was McCallum's.

A review of other cases confirms the Court's conclusion that the state court did not unreasonably apply clearly-established law under 28 U.S.C. § 2254(d)(1).  In *Olden v. Kentucky*, 488 U.S. 227 (1988), the Court applied the *Davis* and *Van Arsdall* standards in a rape case where the trial court had refused to permit defense counsel to cross-examine the victim on whether she was living with her boyfriend (the defendant's half-brother) at the time of trial.  The defendant's defense was that his sexual encounter with the victim was not rape but consensual sex, and he wished to use the impeachment evidence to show that (1) the victim had a motive to lie because she didn't want her boyfriend to find out she had

MEMORANDUM ORDER  9

consensual sex with his half-brother, and (2) the boyfriend has a bias to testify in favor of the victim's story.

Applying the *Van Arsdall* factors, the Supreme Court found that the victim's testimony was "central, even crucial, to the prosecution's case." *Id*. at 233.  The victim's testimony was also directly contradicted by the defendant and his accomplice, and it was corroborated only by the testimony of her boyfriend.  *Id*.  The Court also noted that the State's case was "far from overwhelming," as "demonstrated graphically by the jury's verdicts, which cannot be squared with the State's theory of the case."  Id.

*Olden* is unlike Petitioner's case.  McCallum's testimony was contradicted by no one; it was corroborated by all of the other witnesses and by the hearsay testimony of Petitioner's girlfriend, contained in the testimony of Officer Markle.  Further, in Petitioner's case, the jury heard *some* evidence focusing on McCallum's motivation to "turn in" Petitioner and testify against him.  Petitioner did not present any evidence that McCallum aided in the manufacturing or that he used or was involved with drugs.

Petitioner's case is much like *Searcy v. Jaimet*, 332 F.3d 1081 (7th Cir. 2003), where the Sixth Circuit reversed the district court's grant of habeas corpus, holding that the state court's decision was not an unreasonable application of *Davis*, *Van Arsdall*, and *Olden*. The Sixth Circuit Court pointed out that a trial court's decision to foreclose "*any* inquiry in the bias or motivation of the key prosecution witnesses . . . would clearly violate the rule of

MEMORANDUM ORDER  10

*Davis*, *Van Arsdall*, and *Olden*." *Id*. at 1090 (emphasis in original).[2]  The *Searcy* court distinguished its facts from the cases of precedent, noting that the trial court had not simply foreclosed all such evidence, but it had allowed Searcy to attempt to lay foundation for the impeachment evidence he wished to present, which Searcy was unable to do.

The Sixth Circuit concluded: "[W]e cannot say that the Illinois courts' determination that Searcy failed to establish a sufficient factual basis for his desired line of questioning was 'objectively unreasonable,'" given that Searcy's foundation evidence showed only a mere "possibility" that his assertions were true. *Id*. at 1091-92.  The Sixth Circuit further observed: "A federal court's deference to the state court's resolution of the issues involved is even more important when such resolution requires the weighing of factors against one another: 'when the constitutional question is a matter of degree, rather than of concrete entitlements, a reasonable decision by the state court must be honored.'" *Id*. at 1091

---

[2] In a slightly different context, the Ninth Circuit recently emphasized that to impeach a co-conspirator for bias because he entered a plea agreement in exchange for his testimony raises the question of his "reliability in a much different (and lesser) way" than to cross-examine him "on actual statements inconsistent with what he was then saying on the stand [regarding [defendant's] involvement in the robbery and murder." *Murdoch v. Castro*, 365 F.3d 699, 705 (9th Cir. 2004).  The omitted evidence in *Murdoch* was a letter from a co-conspirator to his attorney that exonerated Murdoch. *Id*. at 701-02.  This observation suggests that a court's refusal to allow the jury to hear impeachment evidence that directly addresses the defendant's guilt or innocence is to be scrutinized more closely than a refusal to permit evidence merely impeaching a witness on bias grounds.  The Ninth Circuit concluded that, as a result of the nature of the prohibited cross-examination in *Murdoch*, the defendant's ability to fully cross-examine the co-conspirator was "severely limited" by the trial court's ruling. *See id*.  Here, McCallum's pending drug charge is more closely related to bias rather than directly to Petitioner's guilt or innocence.

MEMORANDUM ORDER  11

(quoting *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997)).  For this same reason, Petitioner's claim fails under 28 U.S.C. § 2254(d)(1).

Having concluded that § 2254(d)(1) offers no relief to Petitioner, the Court also reviews the case in light of 28 U.S.C. § 2254(d)(2).  There is nothing in the record to suggest that the opinion is based on an unreasonable determination of the facts in light of the evidence presented to the jury.  Accordingly, relief under 28 U.S.C. § 2254(d) is unwarranted.  This case shall be dismissed with prejudice.

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED.  Petitioner's Petition is dismissed with prejudice.



DATED: **July 25, 2005**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM ORDER  12